# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LISA M. BALLARD-COLLINS,
      Appellant,

      v.

DEPARTMENT OF THE ARMY,
      Agency.

DOCKET NUMBER
SF-0752-13-0617-I-1

DATE: March 24, 2016

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Maria S. Lillis, Honolulu, Hawaii, for the appellant.

Rachael Orejana, Esquire, Fort Shafter, Hawaii, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's removal. For the reasons discussed below, we GRANT the agency's petition for review. We AFFIRM the initial decision to the extent that it: (1) found that the agency failed to prove the charge of discourteous behavior towards customers; (2) found that the agency failed to prove the charge

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

of failure to follow instructions; and (3) found that the appellant failed to prove her affirmative defenses of denial of due process and retaliation for equal employment opportunity (EEO) and union activity. We REVERSE the initial decision to the extent that it found that the agency failed to prove the charge of discourteous behavior towards coworkers. We find that the appellant failed to prove her affirmative defense of harmful procedural error and MITIGATE the penalty to a 5-day suspension.

## BACKGROUND

¶2 The appellant was a GS-12 Information Technology Specialist (ITS) assigned to the 516th Signal Brigade, 30th Signal Battalion, at the agency's Schofield Barracks, Hawaii. Initial Appeal File (IAF), Tab 7 at 13 of 24. In that capacity, among other duties, she served as a team leader responsible for providing administrative and technical support to Customer Service Center (CSC) staff. *Id.* at 22 of 24; IAF, Tab 14 at 9, Tab 29, Hearing Compact Disc (HCD) (testimony of the appellant's coworker, B.K.).

¶3 In October 2012, the agency initiated an informal investigation into certain complaints and allegations regarding the appellant. IAF, Tab 7 at 15 of 46; HCD (testimony of the deciding official, Lieutenant Colonel B.D.). The investigating officer concluded, in pertinent part, that the appellant had acted with discourtesy towards certain coworkers and CSC customers. IAF, Tab 7 at 8-9 of 46. Subsequently, the agency removed the appellant, effective June 6, 2013, based on the following charges: (1) discourteous behavior towards customers of the 30th Signal Battalion, CSC (three specifications); (2) discourteous behavior towards coworkers (seven specifications); and (3) failure to follow instructions (one specification). *Id.* at 15, 20-22 of 24.

¶4 The appellant filed a timely Board appeal challenging her removal, and raised a number of affirmative defenses. IAF, Tab 1 at 3; *see* IAF, Tab 16 at 27-44. Following a hearing, on July 21, 2015, the administrative judge issued

an initial decision reversing the agency's removal action. IAF, Tab 30, Initial Decision (ID). He found that the agency failed to meet its burden to prove any of the three charges by preponderant evidence. ID at 3-20. The administrative judge declined to address the appellant's affirmative defense of harmful procedural error, because he reversed her removal on other grounds, but found that she failed to prove her remaining affirmative defenses. ID at 20-24. The administrative judge ordered the agency to cancel the appellant's removal, restore her to duty, provide her with back pay, and provide her interim relief in accordance with 5 U.S.C. § 7701(b)(2)(A), if either party filed a petition for review of the initial decision. ID at 24-26.

¶5 The agency has filed a petition for review of the initial decision, in which it argues that the administrative judge erred in finding that it failed to prove the charges of discourteous behavior towards customers and coworkers.[2] Petition for Review (PFR) File, Tab 1 at 1-6. The appellant has responded to the agency's petition for review. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board declines to dismiss the agency's petition for review for failure to comply with the administrative judge's interim relief order.

¶6 Where, as here, the appellant was the prevailing party in the initial decision and interim relief was ordered, a petition for review filed by the agency must be accompanied by a certification that it has complied with the interim relief order. 5 C.F.R. § 1201.116(a). In the present case, the agency's petition for review was accompanied by: (1) a declaration from counsel for the agency, which stated that the agency had reinstated the appellant effective July 21, 2015, and had taken steps necessary for her to return to work in September 2015, after she returned from personal travel abroad; and (2) copies of several Standard Form

---

[2] The agency does not challenge the administrative judge's finding that it failed to prove the charge of failure to follow instructions, and we discern no reason to disturb this finding on review. Petition for Review File, Tab 1; *see* ID at 18-20.

50s (SF-50s) reflecting the appellant's reinstatement, effective July 21, 2015. PFR File, Tab 1 at 7−10.

¶7   After the appellant responded to the petition for review, she subsequently submitted two additional pleadings, which she captioned as a "Petition for Enforcement of Interim Relief," and exhibits thereto. PFR File, Tabs 4-5. In these pleadings, she asserted that: (1) she had only been paid for 4 hours of work since her reinstatement; (2) since her reinstatement, she was accruing annual leave at a rate of 4 hours per pay period, when she was entitled to accrue such leave at a rate of 8 hours per pay period; and (3) her health insurance benefits had not been reinstated.[3]  PFR File, Tab 4 at 8. The agency responded to the appellant's submissions, asserting that she had received pay for some of the time period since her reinstatement and that the remainder of her pay was forthcoming.[4]  PFR File, Tab 7 at 7. The agency did not, however, address the appellant's arguments regarding her health insurance benefits and annual leave accrual rate. *Id*.

---

[3] The appellant also argued that the agency failed to comply with the interim relief order because the SF-50s documenting her reinstatement referred to her appointment as an interim, as opposed to a permanent, appointment. PFR File, Tab 4 at 7; *see* PFR File, Tab 1 at 8-10. However, to comply with the interim relief order, the agency was only required to provide the appellant with an interim appointment. *See Lewis v. Department of the Army*, 58 M.S.P.R. 325, 335 (1993) (finding that an agency complied with an interim relief order where it provided an appellant with an interim appointment restoring him to his former position); *see also* 5 C.F.R. § 772.102(a) (providing that interim personnel actions shall be made effective upon the date of issuance of the initial decision).

[4] The agency indicated that part of the delay in providing the appellant the pay she was due was caused by not having her signature on certain documents because she was traveling. PFR File, Tab 7 at 7. In support of its claim that it had paid her for a portion of the time period since her reinstatement, the agency submitted the Master Pay History for the appellant, which it asserted reflected the payment of salary and benefits beginning July 21, 2015. *Id.* at 7-27. However, the agency did not explain the Master Pay History, and we are unable to ascertain from the documentation whether the agency properly paid the appellant, afforded her the correct amount of annual leave each pay period, and provided her health insurance benefits. PFR File, Tab 8 at 3.

¶8       The Board's regulations do not provide for a motion for compliance with an interim relief order, and the Board will not entertain such a motion. *Forma v. Department of Justice*, 57 M.S.P.R. 97, 102, *aff'd*, 11 F.3d 1071 (Fed. Cir. 1993); 5 C.F.R. § 1201.182(a)-(b).  The Board's regulations do, however, allow an appellant to challenge an agency's certification that it has provided interim relief, and the Board may dismiss a petition for review if it finds the agency in noncompliance with its interim relief obligations.  5 C.F.R. § 1201.116(b), (e); *see Bradstreet v. Department of the Navy*, 83 M.S.P.R. 288, ¶¶ 11-13 (1999) (dismissing an agency's petition for review based on its 8-month delay in providing an appellant with back pay required by an interim relief order), *aff'd*, 18 F. App'x 885 (Fed. Cir. 2001).  Accordingly, on November 2, 2015, the Board issued a show cause order, which advised the parties that the Board would consider the appellant's submissions as a motion to dismiss the agency's petition for review for failure to comply with the interim relief order.  PFR File, Tab 8 at 2.  The show cause order also directed the agency to submit evidence and argument addressing the appellant's assertion that she had not been provided with interim relief in the form of salary and benefits, including the correct accrual rate of annual leave and health insurance.  PFR File, Tab 8 at 3; 5 C.F.R. § 1201.116(b).  The Board afforded the appellant an opportunity to respond to the agency's submissions.  PFR File, Tab 8 at 3.

¶9       Both parties timely responded to the show cause order.  PFR File, Tabs 10-11.  The agency submitted a second declaration from its counsel, dated November 12, 2015, asserting that she had confirmed:  (1) with an agency payroll technician that the agency had paid the appellant for all pay periods from July 21, 2015, "through the present"; and (2) that the agency had restored the appellant's health insurance benefits.  PFR File, Tab 11 at 4.  The agency's response did not address the appellant's accrual rate of annual leave.  *Id*.

¶10      In the appellant's response to the show cause order, she does not dispute the agency's assertion that her health insurance benefits have been restored.  PFR

File, Tab 11. She also does not dispute the agency's assertion that, as of the date of the agency's response to the show cause order, it paid her for all pay periods from July 21 through November 12, 2015, although she describes various difficulties that she encountered obtaining those payments.[5] *Id*. at 5-6. However, the appellant reiterates her argument that her annual leave accrual rate is incorrect. *Id.* at 6-7.

¶11    If an agency fails to establish compliance with an interim relief order, the Board has the discretion to dismiss its petition for review, but need not do so. *Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1332-34 (Fed. Cir. 2004); 5 C.F.R. § 1201.116(e); *see Erickson v. U.S. Postal Service*, 120 M.S.P.R. 468, ¶ 11 (2013). In the instant case, the agency's shortcomings in compliance with the interim relief order are not sufficiently egregious to warrant the sanction of dismissal. *See, e.g.*, *Stack v. U.S. Postal Service*, 101 M.S.P.R. 487, ¶¶ 5-6 (2006) (declining to dismiss an agency's petition for review where the agency failed to establish that an appellant received the correct pay, compensation, and benefits in accordance with an interim relief order).

The administrative judge correctly found that the agency failed to prove the charge of discourteous behavior towards customers.

¶12    On review, the agency contests the administrative judge's finding that it failed to prove the charge of discourteous behavior towards customers. PFR File, Tab 1 at 2-4. Specifically, the agency challenges the administrative judge's findings that it failed to prove specifications one and two of the charge.[6] *Id.* For

---

[5] Specifically, the appellant asserts that, as the result of various inquiries that she made with agency representatives, on October 1, 2015, the agency paid her for 188 hours of work. PFR, Tab 11 at 5-6. She claims that the agency initially failed to pay her for a subsequent pay period but that she later received payment after she raised the issue with an agency pay representative. *Id.* at 6.

[6] On review, the agency has not challenged the administrative judge's finding that it failed to prove specification three of the charge, and, thus, we need not address this matter further. PFR File, Tab 1 at 2-4; *see* ID at 9-11.

the following reasons, we find that the administrative judge correctly found that the agency failed to prove the charge of discourteous behavior towards customers.

*Specification One*

¶13    In specification one of the charge of discourteous behavior towards customers, the agency alleged that in 2012, after Sergeant D.G. called the CSC, he reported:

> It sounded like [the appellant] called me a "jerk" during the conversation, I immediately apologized for being perceived as one and she said "well you are."

IAF, Tab 7 at 20 of 24; HCD (testimony of Sergeant D.G.).   Sergeant D.G. testified that in August 2012, he called the CSC with a computer issue and the appellant was abrupt and unprofessional, he felt that she was unwilling to assist him, and the appellant stated that he was "acting like a jerk," or "words to that effect."  HCD (testimony of Sergeant D.G.).

¶14    The appellant denied calling Sergeant D.G. a jerk.  HCD (testimony of the appellant).  She testified that she was unable to assist Sergeant D.G. without a work order and that he became increasingly upset as she explained this to him. *Id*.  She testified that during their exchange, Sergeant D.G. stated that he was not "trying to be an a-hole," and that she had responded that she did not think that he was, but felt that he was being "a little short."  *Id*.  After the appellant's interaction with Sergeant D.G., she sent her supervisor an email describing their conversation, which was consistent with her testimony at the hearing.  IAF, Tab 16 at 271-73; HCD (testimony of the appellant).

¶15    The administrative judge found that there was inadequate evidence to support a finding that the appellant had called Sergeant D.G. a jerk, or words to that effect, as alleged in the specification.  ID at 5, 7.  He found that Sergeant D.G.'s testimony in this regard was equivocal compared to the remainder of his testimony and that it was apparent that he was focused on

navigating the bureaucracy necessary to resolve the computer issue, rather than trying to remember exact words used by the appellant.[7]  ID at 6.

¶16	On review, the agency argues that the administrative judge erred in failing to credit the testimony of Sergeant D.G., because his testimony that the appellant called him a jerk was consistent with his testimony that she was rude during their conversation, and consistent with sworn statements prepared by other individuals during the agency's investigation that the appellant generally was rude and abrasive.  PFR File, Tab 1 at 2.  After careful consideration, we find that the administrative judge properly considered the appropriate factors for making credibility determinations set forth in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), and correctly concluded that Sergeant D.G.'s testimony that the appellant stated that he was "acting like a jerk," or "words to that effect," was equivocal, and insufficient to prove that the appellant engaged in the charged misconduct.  ID at 5-6; HCD (testimony of Sergeant D.G.).

¶17	Furthermore, because the administrative judge's credibility determination regarding Sergeant D.G. was based in part on an assessment of his demeanor, the Board cannot set the determination aside absent "sufficiently sound" reasons for doing so.  ID at 6; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002) (finding that the Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so).  The agency's argument on review, that Sergeant D.G. and other individuals alleged that the appellant generally was rude, does not present a sufficiently sound basis to overturn the administrative judge's finding.  Indeed,

---

[7] The administrative judge further noted that the documents that the agency relied on during its investigation similarly raised doubt as to whether the appellant called Sergeant D.G. a jerk.  ID at 6.  Specifically, the documents reflect that Sergeant D.G. reported that it "sounded like" the appellant called him a jerk.  IAF, Tab 7 at 20-21 of 46.

the administrative judge specifically recognized that Sergeant D.G. testified that the appellant was rude. ID at 6. However, specification one did not allege that the appellant was rude; instead, it alleged that she called Sergeant D.G. a jerk, or words to that effect. IAF, Tab 7 at 20 of 24. Accordingly, we discern no error in the administrative judge's finding that the agency failed to prove the allegations in specification one by preponderant evidence. *See Lachance v. Merit Systems Protection Board*, 147 F.3d 1367, 1372 (Fed. Cir. 1998) (holding that where a specification contains the only meaningful description of the charge, the agency must prove what it has alleged in the specification); *Stuhlmacher v. U.S. Postal Service*, 89 M.S.P.R. 272, ¶ 14 (2001) (finding that the Board adjudicates a charge as it is described in the agency's proposal and decision notices).

*Specification Two*

¶18    In specification two of the charge of discourteous behavior towards customers, the agency alleged that, following an interaction with the appellant about a computer network problem in the veterinary clinic on or about August 10, 2012, Chief of Veterinary Services and Food Safety Captain T.K. reported:

> The conversation was not pleasant and was several decibels above what it needed to be . . . .I am a professional in a customer service oriented organization and can honestly say that this was the worst customer service that I have received.

IAF, Tab 7 at 20 of 24; *see* HCD (testimony of Captain T.K.).

¶19    At the hearing, Captain T.K. testified that the appellant was loud, belligerent, used hand gestures, leaned forward, and conveyed an attitude that she was unwilling to provide assistance. HCD (testimony of Captain T.K.). The appellant denied that she was rude to Captain T.K. or that their conversation was loud, and testified that Captain T.K. was upset about the computer problem and that she could not provide an immediate solution. HCD (testimony of the appellant).

¶20    The administrative judge found that the agency failed to prove specification two. ID at 8. He noted that the agency investigation concluded that the appellant

normally spoke in a loud manner that could be perceived as abrasive by some, but within the parameters of acceptability by others.[8] ID at 8. He concluded that, although Captain T.K. may have deemed the conversation to be "several decibels above where it needed to be," and the lack of an immediate solution to the veterinary clinic's network access issues may have been unpleasant and unsatisfying from a customer service standpoint, the agency failed to establish that the appellant's actions constituted discourteous behavior. ID at 8-9.

¶21 On review, the agency argues that raising one's voice to a level that is unacceptable in the workplace may constitute discourtesy. PFR File, Tab 1 at 3. It further contends that the administrative judge failed to consider that Captain T.K. testified that the manner in which the appellant spoke to her was upsetting. *Id.*

¶22 We agree with the agency that, under some circumstances, raising one's voice in the workplace may constitute discourteous behavior. *See Walker v. Department of the Army*, 102 M.S.P.R. 474, ¶¶ 12-13 (2006) (explaining that an appellant was discourteous towards his supervisor during a telephone conversation when he got angry, raised his voice, and hung up on his supervisor); *Beaudoin v. Department of Veterans Affairs*, 99 M.S.P.R. 489, ¶ 10 (finding that an appellant was disrespectful towards his supervisor where he advanced towards her, posed with his arms crossed, challenged her to respond to his questions in a raised voice, and ignored her request that he step back, stating that she should leave instead), *aff'd as modified on recons.*, 100 M.S.P.R. 507 (2005). However, we discern no error in the administrative judge's conclusion that, in the present case, the agency failed to prove that the appellant's conduct, including her loud voice, constituted discourteous behavior. ID at 8-9.

---

[8] The administrative judge further noted that, during the hearing, the appellant tended to speak in a consistently loud voice, in a manner that could be described as abrasive. ID at 8.

¶23      Contrary to the agency's assertions on review, the administrative judge considered Captain T.K.'s testimony concerning the appellant's loud voice and demeanor.  ID at 7.  While the evidence indicates that Captain T.K. perceived the appellant's loud voice and demeanor as rude, based on the record as a whole it is debatable whether the appellant's manner of speaking and demeanor were acceptable or crossed the line into discourtesy.  In sum, we discern no error in the administrative judge's finding that the agency did not meet its burden of proving that the appellant's actions regarding specification two constituted discourteous behavior.[9]  ID at 8-9.

The agency proved the charge of discourteous behavior towards coworkers.

¶24      On review, the agency challenges the administrative judge's findings that it failed to prove the charge of discourteous behavior towards coworkers.  PFR File, Tab 1 at 4-6.  However, the agency fails to identify specific factual or legal errors by the administrative judge in failing to sustain particular specifications of the charge.  *Id.*  Indeed, the agency fails to identify which specifications of the charge it contends that the administrative judge erred in failing to sustain.  *Id.*  Instead, it presents generalized legal arguments, and lists examples of instances where various coworkers reported that the appellant treated them with discourtesy in sworn statements prepared during the agency investigation.  *Id.*

¶25      A petition for review must contain sufficient specificity for the Board to ascertain whether there is a serious evidentiary challenge justifying a complete review of the record.  *Tines v. Department of the Air Force*, 56 M.S.P.R. 90, 92 (1992).  Under the Board's regulations, the petition for review itself must identify

---

[9] On review, the agency further argues that the fact that Captain T.K. already was frustrated when she came to the CSC did not excuse the appellant's raising her voice at a customer.  PFR File, Tab 1 at 3.  However, the administrative judge did not find that the appellant's conduct was excusable because of Captain T.K.'s frustration.  ID at 8-9.  Instead, he found that the appellant's voice was consistently loud and that different people could have different perceptions regarding whether her manner of speaking was discourteous.  ID at 8.

any procedural or adjudicatory errors and explain how they affected the outcome of the initial decision. 5 C.F.R. §§ 1201.114(b), 1201.115(b)-(c). We find that the agency's arguments on review regarding many of the specifications under the charge of discourteous behavior towards coworkers do not meet this standard. It is the agency's burden, as the petitioner, to clearly state its objections to the initial decision, supported by references to applicable laws and the record. 5 C.F.R. § 1201.114(b); *see Thompson v. Department of the Army*, 122 M.S.P.R. 372, ¶ 10 (2015) (finding that an agency's reference to a supervisor's testimony on review was insufficient to warrant a complete review of the record, where the agency did not explain why the testimony warranted a change in the outcome of the appeal). Accordingly, we have not revisited the administrative judge's findings or reanalyzed the evidence, which includes over 9 hours of hearing testimony, regarding specifications one, four, six, seven, and part of specification two.[10] *Davison v. Department of Veterans Affairs*, 115 M.S.P.R. 640, ¶ 9 (2011) (determining that mere disagreement with the administrative judge's explained findings are not a basis to grant the petition for review); *Weaver v. Department of the Navy*, 2 M.S.P.R. 129, 133 (1980), *review denied*, 669 F.2d 613 (9th Cir. 1982) (per curiam) (finding that, before the Board will undertake a complete review of the record, the petitioning party must explain why the challenged factual determination is incorrect, and identify the specific evidence in the record which demonstrates the error). Instead, we have limited our review to the administrative judge's findings regarding part of specification two, and specifications three and five, which are clearly addressed in the agency petition for review consistent with the Board's regulations.

---

[10] Several of the specifications at issue in the charge of discourteous behavior towards coworkers comprise numerous independent allegations. IAF, Tab 7, Subtab 4C at 21-22. For example, specification two is a paragraph long and describes multiple instances of the appellant's discourtesy to various coworkers, as reported by her coworker, B.K. *Id*. at 21.

*Specification Two*

¶26 In specification two, the agency alleged, in pertinent part, that the appellant's coworker, B.K., reported that when she asked a question of a customer whom the appellant was assisting:

> [the appellant] came up immediately and animatedly asked "Are you monitoring me now too?" and got right in my face as she asked it. We had a customer present during the interaction. I felt embarrassed by the situation.

IAF, Tab 7 at 21.

¶27 The administrative judge found that the agency failed to prove that the appellant's actions regarding this specification constituted discourteous behavior. ID at 14. He noted that there was tension between the appellant and E.T., the Deputy Director of the training section, concerning training section personnel monitoring certain courses that CSC employees taught. ID at 12-13; *see* HCD (testimony of E.T. and M.R.).

¶28 On review, the agency refers to B.K.'s sworn statement prepared during its investigation, in which she asserts that the appellant accused B.K. of monitoring her. PFR File, Tab 1 at 4. We construe the agency's reference as an argument that the administrative judge erred in failing to sustain the portion of specification two alleging that the appellant was discourteous when she accused B.K. of monitoring her. We agree that the administrative judge erred in failing to sustain this portion of specification two. At the hearing, B.K. testified that the incident occurred, although she attempted to justify the appellant's behavior by explaining that the appellant was being monitored by employees of the training section and became concerned that "everyone was against her." HCD (testimony of B.K.). The administrative judge similarly excused the appellant's behavior due to tensions between the appellant and the training section regarding monitoring of CSC courses. ID at 12-13. As an initial matter, B.K. was not part of the training section, but rather, part of the CSC, and it is unclear why the appellant's tensions with the training section would justify her statement to B.K. IAF, Tab 7 at 23

of 34; HCD (testimony of B.K.). Furthermore, while unusual job tensions may be considered as a mitigating factor in determining an appropriate penalty, *see Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305 (1981), they are not a defense to a charge of discourteous behavior. *See Peters v. Federal Deposit Insurance Corporation*, 23 M.S.P.R. 526, 528 (1984) (considering the fact that an appellant worked in a "pressure cooker" environment as a mitigating factor in assessing the reasonableness of the penalty of removal for charges of discourteous and unprofessional conduct), *aff'd*, 770 F.2d 182 (Fed. Cir. 1985) (Table).

¶29    Accordingly, we find that the agency proved the portion of specification two alleging that the appellant engaged in discourteous behavior towards a coworker when she accused B.K. of monitoring her in front of a customer. *See Green v. Department of the Navy*, 61 M.S.P.R. 626, 633 n.10 (explaining that portions of a specification that constitute individual allegations of misconduct under a charge may be independently sustained), *aff'd*, 36 F.3d 1116 (Fed. Cir. 1994) (Table). Because a portion of specification 2 is sustained, the charge itself also is sustained. *See Crawford v. Department of the Treasury*, 56 M.S.P.R. 224, 232 (1993) (finding that a partly sustained specification was sufficient to sustain a charge); *see also Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (discussing that where more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

*Specification Five*

¶30    On review, the agency argues that the administrative judge failed to consider evidence that the appellant was rude and disrespectful towards her former supervisor, J.B.[11]  PFR File, Tab 1 at 5.  We construe the agency's

---

[11] J.B. was the appellant's supervisor at the CSC until 2011, when the agency reassigned him to another position.  IAF, Tab 7 at 5 of 34; HCD (testimony of the appellant).

assertion as an argument that the administrative judge erred in failing to sustain specification five, in which the agency alleged, in pertinent part,[12] that J.B. reported that, on or about August 2012, the appellant yelled out at him across a parking lot, "don't you ever come into the CSC again." IAF, Tab 7 at 21 of 24.

¶31 The agency did not call J.B. to testify but instead, relied solely on his sworn statement prepared during the agency investigation. ID at 16; IAF, Tab 4 at 5-9 of 34. The administrative judge found that, although the agency proved that J.B. had reported the allegations in specification five, the agency failed to prove by preponderant evidence that the appellant engaged in the misconduct described in the specification. ID at 16.

¶32 Hearsay evidence, such as J.B.'s sworn statement made during the agency investigation, may be used in Board proceedings and may be accepted as preponderant evidence even without corroboration if, "to a reasonable mind, the circumstances are such as to lend it credence." *Kewley v. Department of Health & Human Services*, 153 F.3d 1357, 1364 (Fed. Cir. 1998). The probative value of hearsay evidence, such as the sworn statement of J.B., must be evaluated in terms of the factors set forth in *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 87 (1981).[13] *See Vaughn v. U.S. Postal Service*, 109 M.S.P.R. 469, ¶ 9 (2008), *aff'd*, 315 F. App'x 305 (Fed. Cir. 2009). These factors include, among others: the availability of persons with firsthand

---

[12] On review, the agency does not raise any specific challenge to the administrative judge's findings that it failed to prove the remaining allegations in specification five and, therefore, we do not address these allegations further. PFR File, Tab 1; *see* ID at 16.

[13] The administrative judge failed to explicitly analyze the agency's hearsay evidence under the *Borninkhof* factors. ID at 16. However, to the extent that he erred in failing to do so, that error did not affect either party's substantive rights. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (finding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision). We have conducted that analysis on review, and agree with the administrative judge's conclusion that the hearsay statement of J.B. was insufficient to prove the allegation at issue in specification five.

knowledge to testify at the hearing; whether the out-of-court statements were sworn; the consistency of the out-of-court statements with other statements and evidence; the consistency of a declarant's accounts with other information in the case; whether the declarant was disinterested; and whether corroboration for the statements otherwise can be found in the agency record. *Borninkhof*, 5 M.S.P.R. at 87.

¶33         Applying these factors to J.B.'s sworn statement, we find that the administrative judge correctly concluded that this evidence was insufficient to prove the allegations in specification five. ID at 16. We recognize that J.B.'s statement prepared during the agency investigation was sworn and that weighs in the agency's favor. IAF, Tab 7 at 5-9 of 34; *see Borninkhof*, 5 M.S.P.R. at 87. However, the agency provided no explanation for its failure to call J.B. as a witness at the hearing, and it did not demonstrate, or even assert, that he was unavailable to testify. *See Womack v. U.S. Postal Service*, 70 M.S.P.R. 285, 291-93 (considering an agency's failure to explain why it failed to call a witness to testify in determining that the witness's hearsay statement was insufficient to prove a charge by preponderant evidence), *aff'd*, 99 F.3d 1160 (Fed. Cir. 1996) (Table). Furthermore, as the administrative judge correctly noted, the agency investigation concluded that there was a "significant acrimonious history" between the appellant and J.B. ID at 16; IAF, Tab 7 at 10 of 46. Thus, it does not appear that J.B. was a disinterested witness. *See McDonald v. U.S. Postal* Service, 20 M.S.P.R. 587, 589 (1984) (considering the fact that two witnesses were not disinterested in finding that their hearsay statements were insufficient to prove a charge against an appellant). Finally, J.B.'s statement is inconsistent with the appellant's live testimony in which she denied yelling at J.B. in a

parking lot, or making the statement alleged in the specification.[14]   HCD (testimony of the appellant).

¶34    In sum, after carefully weighing the hearsay evidence offered by the agency and the live testimony by the appellant, we discern no error in the administrative judge's finding that the agency failed to prove by preponderant evidence the allegations in specification five. *See Robinson v. Department of Health & Human Services*, 39 M.S.P.R. 110, 115-18 (1988) (finding that hearsay evidence may not be sufficiently probative to sustain an agency's burden by preponderant evidence, in light of contradictory live testimony).

*Specification Three*

¶35    On review, the agency notes that in a sworn statement prepared during its investigation, M.R. stated that the appellant was "routinely discourteous" towards training section personnel, and would "talk bad about other elements of the command" in an effort to influence the perception of students in the course. PFR File, Tab 1 at 5; IAF, Tab 7 at 6 of 43. We construe this argument as a challenge to the administrative judge's finding that the agency failed to prove specification three of the charge. ID at 14-15. In specification three, the agency alleged that M.R. reported that the appellant was "a bully that likes to intimidate people," and that the "manner in which [she] treats people is humiliating." IAF, Tab 7 at 21 of 24. M.R. testified that the appellant refused to teach a course when M.R. was present in the classroom. *Id.* The administrative judge found that the agency

---

[14] On review, the agency alleges that the administrative judge failed to consider that J.B.'s statement was consistent with the sworn statement of M.R., who asserted that the appellant was rude and disrespectful towards J.B. PFR File, Tab 1 at 5; *see* IAF, Tab 7 at 6 of 43. However, M.R.'s sworn statement does not provide any detail regarding the appellant's alleged discourtesy towards J.B., other than to state that they argued in a classroom on unspecified dates, and there is no evidence to indicate that her statement referred to the alleged incident in the parking lot at issue in specification five. IAF, Tab 7 at 6 of 43. Furthermore, although the agency called M.R. to testify at the hearing, it did not elicit any testimony regarding the appellant's alleged discourtesy to J.B. HCD (testimony of M.R.).

failed to prove that the appellant's actions constituted discourteous behavior. ID at 15. He noted that, although the record reflected that the interaction between the appellant and M.R. was confrontational, the confrontation centered on a disagreement between the training section and CSC management. *Id.*

¶36    M.R. failed to provide additional detail regarding the allegations in her sworn statement that the appellant was "routinely discourteous," towards training section personnel, and would "talk bad about other elements of the command." IAF, Tab 7 at 6 of 43. On review, the agency has failed to identify any testimony or other evidence that it contends supports these generalized allegations. PFR File, Tab 1 at 4. For these reasons, we find the agency's argument does not form a basis for reversing the administrative judge's finding that the agency failed to prove specification three.

The appellant failed to prove her affirmative defenses by a preponderance of the evidence.

¶37    The administrative judge found that the appellant failed to prove her affirmative defenses of denial of due process and retaliation for union activity. ID at 20-21, 22-24. Because these findings are supported by the weight of the record evidence and the applicable law, we discern no reason to disturb them on review. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding no reason to disturb an administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶38    The administrative judge further found that the appellant failed to establish her affirmative defense of retaliation for EEO activity. ID at 21-22. After the initial decision was issued, the Board issued a decision that clarified the evidentiary standards and burdens of proof under which the Board analyzes this type of claim. *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 42-43, 51 (2015). We find that applying the analytical framework in *Savage* would not

change the result in this case. Thus, based on the existing record, and for the reasons discussed in the initial decision, we affirm the administrative judge's findings that the appellant did not meet her burden of proving her affirmative defense of retaliation for EEO activity.

¶39     The administrative judge declined to address the appellant's claim of harmful procedural error because he reversed her removal on other grounds. ID at 21. Because we sustain one of the agency's charges, we will address the appellant's harmful procedural error claim.[15]

¶40     Below, the appellant alleged that the agency committed harmful procedural error in conducting an Army Regulation (AR) 15-6 investigation into the allegations against her, contending that it is improper to conduct such an investigation against a civilian employee. IAF, Tab 16 at 27-28, 41. We find, as an initial matter, that she has failed to show that it is improper to conduct an AR 15-6 investigation against a civilian employee. She cites to a section of AR 15-6 stating that the agency requires a waiver for exceptions to the regulation, but does not identify any provision of the regulation prohibiting investigations against civilian employees, or limiting the use of investigations to enlisted military. IAF, Tab 16 at 28, 97.

¶41     Furthermore, to demonstrate harmful error, an appellant must prove that any procedural error substantially prejudiced her rights by possibly affecting the agency's decision. *Tom v. Department of the Interior*, 97 M.S.P.R. 395, ¶ 43 (2004); *Salter v. Department of the Treasury*, 92 M.S.P.R. 355, ¶ 7 (2002). Even assuming that the agency was prohibited from utilizing an AR 15-6 investigation

---

[15] Several of the appellant's claims that she characterizes as harmful procedural error allegations are, instead, challenges to the merits of the agency's charges against her. For example, she asserts that the agency violated a provision of a collective bargaining agreement requiring that disciplinary actions be taken for just cause, and be reasonable. IAF, Tab 16 at 31; PFR File, Tab 3 at 6. In addition, below, she incorrectly characterized her due process claims as harmful procedural error. IAF, Tab 16 at 41. Finally, several of the appellant's arguments are challenges to the penalty determination, rather than claims of harmful procedural error. *See id.* at 30-31.

against a civilian, the appellant has not demonstrated that this alleged error potentially affected the agency's decision. She has identified nothing that would have prohibited the agency from otherwise interviewing witnesses and obtaining statements and information regarding the allegations against her, regardless of the investigation format. IAF, Tab 16 at 27-28, 41.

¶42 Below, the appellant also alleged that the agency committed harmful procedural error when it failed to provide her union with a copy of documentation regarding the proposed disciplinary action, referred to as a "CPAC-25," within the time limits required under a collective bargaining agreement. *Id.* at 31, 40. However, even assuming that the agency violated the collective bargaining agreement in this regard, the appellant has failed to establish that this error was harmful, where, as here, she admits that the agency subsequently provided her with the CPAC-25, and asserts that she prepared a "thorough rebuttal" in her response to the notice of proposed removal. *Id.* at 40.

¶43 We have considered the appellant's numerous other arguments regarding harmful procedural error below,[16] including her claims that the agency violated

---

[16] In her response to the petition for review, for the first time, the appellant argues that agency policy prohibited it from relying on certain customer feedback comments, known as Interactive Customer Evaluation (ICE) comments, as a basis for her removal. PFR File, Tab 3 at 7-8. We construe this argument as a new claim of harmful procedural error raised in the first instance on review. In support of her new argument, the appellant has submitted documents that are not contained in the record below, including a July 31, 2009 memorandum regarding the agency's ICE system policy. *Id.* at 13-30. These documents appear to predate the initial decision, and the appellant has not explained why they were unavailable before the record closed below despite her due diligence. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (finding that under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence). Thus, we will not consider the appellant's new evidence and arguments submitted for the first time in response to the petition for review. *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (finding that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence). Regardless, because we affirm the administrative judge's findings that the

the collective bargaining agreement by failing to inform her of detrimental entries on her service record card in a timely fashion, *id.* at 29-30, and find that she has failed to demonstrate that any alleged errors by the agency potentially affected its decision.

The appellant's removal is mitigated to a 5-day suspension.

¶44    Having sustained the charge of discourteous behavior towards coworkers, and having found that the appellant failed to prove her affirmative defenses, we must turn to the issue of the penalty.[17]  Where, as here, the Board does not sustain all of the charges, it will carefully consider whether the sustained charges merit the agency's imposed penalty.  *See Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶ 17 (2014).  In such a case, the Board may mitigate the penalty to the maximum reasonable penalty so long as the agency has not indicated in either its final decision or in proceedings before the Board that it desires that a lesser penalty be imposed on fewer charges.  *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999).  Here, the agency has not so indicated.

¶45    As an initial matter, we note that, of the three charges on which the agency relied in selecting the penalty, we have sustained only a single charge.  Furthermore, regarding the sustained charge, we have only partially sustained one of the seven specifications of the charge.  *See Payne v. U.S. Postal Service*, 72 M.S.P.R. 646, 651 (1996) (explaining that an agency's failure to sustain all of its supporting specifications may require, or contribute to, a finding that the penalty is not reasonable).

---

agency failed to prove the charge of discourteous behavior toward customers, it does not appear that the appellant's arguments regarding customer feedback comments are relevant.

[17] Where, as here, the appellant's discourteous behavior towards coworkers occurred at work, there is a sufficient nexus between the conduct and the efficiency of the service. *See Miles v. Department of the Navy*, 102 M.S.P.R. 316, ¶ 11 (2006).

¶46     Nevertheless, we recognize that disrespectful conduct is a serious offense. *Suggs v. Department of Veterans Affairs*, 113 M.S.P.R. 671, ¶ 8 (2010), *aff'd*, 415 F. App'x 240 (Fed. Cir. 2011).     Furthermore, the deciding official appropriately considered the appellant's status as a team leader, who other employees looked to for guidance, as an aggravating factor in the penalty determination.     IAF, Tab 15 at 7; *see Edwards v. U.S. Postal Service*, 116 M.S.P.R. 173, ¶ 14 (2010) (finding that agencies are entitled to hold supervisors to a higher standard than nonsupervisors because they occupy positions of trust and responsibility).

¶47     In addition, the appellant has a prior disciplinary history.     IAF, Tab 7 at 4-13 of 14.  She was suspended for 7 days in February 2010 for discourtesy and creating a disturbance, and for 14 days in October 2010 for failure to follow instructions.  *Id.*  We find that the deciding official properly considered the appellant's prior disciplinary history as an aggravating factor.[18]  IAF, Tab 15 at 8; *Douglas*, 5 M.S.P.R. at 305 (finding that an employee's prior discipline is a factor to consider in determining the penalty for misconduct).

¶48     However, the consistency of the penalty imposed with the agency's table of penalties is also a relevant factor in determining the reasonableness of the penalty.  *Peterson v. Department of Transportation*, 54 M.S.P.R. 178, 184 (1992); *Douglas*, 5 M.S.P.R. at 305.  The agency's table of penalties is part of the record below.  IAF, Tab 16 at 7-18.  After reviewing it, we find that the appellant's sustained discourteous conduct is more appropriately characterized as "[d]iscourtesy, e.g., rude, unmannerly, impolite acts or remarks (non-discriminatory)" (category 7(a)) than "[u]se of abusive or offensive

---

[18] At the hearing the appellant argued that her prior disciplinary actions should not be considered because they are the subject of proceedings before the Equal Employment Opportunity Commission (EEOC).  HCD (testimony of the appellant).  However, our reviewing court has held that the Board may properly rely on prior disciplinary actions being challenged before the EEOC.  *See Blank v. Department of the Army*, 247 F.3d 1225, 1230 (Fed. Cir. 2001).

language, gestures, or similar conduct (non-discriminatory)" (category 7(b)). *See id.* at 9-10. The Table of Penalties states that the penalty for a second category 7(a) offense ranges from a 1- to a 5-day suspension. *Id*. at 9. Thus, the penalty of removal for the appellant's sustained incident of discourtesy would significantly exceed the recommendations in the agency's table of penalties.

¶49 In addition, unusual job tensions may serve as a mitigating factor. *See Douglas*, 5 M.S.P.R. at 305. As the administrative judge noted, evidence in the record indicates that the absence of a written and enforced policy to channel work flow in the CSC caused friction. ID at 18; IAF Tab 7 at 11 of 34. In addition, B.K. testified that there was confusion in the CSC regarding the nature of the appellant's role and responsibilities as a team leader and that their supervisor was routinely out of the office and unavailable to provide guidance. HCD (testimony of B.K.). Finally, B.K. testified that the appellant was experiencing job tensions resulting from a disagreement between CSC and training section management regarding training section personnel monitoring a certain course that the appellant taught. *Id.*

¶50 Having considered and weighed the aggravating and mitigating factors discussed above, we find that the maximum penalty recommended in the agency's table of penalties for the single sustained incident of discourteous behavior, which was the appellant's second such offense, is the maximum reasonable penalty. Accordingly, we MITIGATE the penalty of removal to a 5-day suspension.

## ORDER

¶51 We ORDER the agency to CANCEL the appellant's removal and SUBSTITUTE in its place a 5–day suspension without pay effective June 6, 2013. *See Kerr v. National Endowment for the Arts,* 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶52        We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶53        We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶54        No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶55        For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.



| DFAS CHECKLIST |
|---|
| **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

a. Outside earnings with copies of W2's or statement from employer.
b. Statement that employee was ready, willing and able to work during the period.
c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63)
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion. Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE: If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.